Dissenting opinion filed by Circuit Judge NEWMAN.
MOORE, Circuit Judge.
Ergo Licensing, LLC and Dr. Uvo Holscher (Ergo, collectively) accused Care-Fusion 303, Inc. (CareFusion) of infringing claims of U.S. Patent No. 5,507,412 ('412 patent) relating to an infusion system. In construing the claims, the district court held that the terms “control means” and “programmable control means” are indefinite. Because the district court correctly held that no corresponding structure is disclosed in the specification, we affirm.
Background
The '412 patent describes an infusion system used to meter and simultaneously deliver fluids from multiple fluid sources into a patient’s body. Each fluid is individually metered so that different fluids may be discharged at different rates. '412 patent col.1 11.6-11, col.2 11.41-49. To meter the fluids, adjusting means are associated with each fluid source that influences the fluid flow for each source. Id. col.1 11.9-12. The adjusting means are coupled to a central control device, which permits the selective actuation and control of individual fluid flow sources via the adjusting means. Id. col.1 11.9-16, col.2 11.41-49. The control device has data fields that “describe at least the metering of the individual fluid flows,” which can be accessed by an operating surface. Id. The operating surface consists of a screen and keypad for viewing and setting the information in the control device, such as the metering rate for each fluid flow source. Id. col.5 11.23-52.
Ergo sued CareFusion for infringement of claims 1-12, 15-16, and 18-20. Prior to the Markman hearing, the parties stipulated that several terms were means-plus-function terms, including the terms “programmable control means” and “control *1363 means.” J.A. 213-15. The programmable control means in claim 1, for example, reads as follows:
programmable control means coupled with said adjusting means for controlling said adjusting means, said programmable control means having data fields describing metering properties of individual fluid flows;
The parties agreed that the analysis for both terms is the same and that the function for the terms is “controlling the adjusting means.” J.A. 1, 9. The district court held that the “control means” terms are indefinite for failure to disclose corresponding structure. Ergo Licensing LLP v. CareFusion 303, Inc., 744 F.Supp.2d 381, 388 (D.Me.2010). Ergo appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).
Discussion
We review claim construction and indefiniteness de novo. Atmel Corp. v. Info. Storage Devices, Inc., 198 F.3d 1374, 1378 (Fed.Cir.1999). Section 112, ¶ 2 requires that a patent specification “conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.” 35 U.S.C. § 112 (2006). An applicant may express an element of a claim “as a means or step for performing a specified function ... and such claim shall be construed to cover the corresponding structure ... described in the specification and equivalents thereof.” 35 U.S.C. § 112 ¶ 6. In exchange for the ability to use a generic means expression for a claim limitation, “the applicant must indicate in the specification what structure constitutes the means.” Biomedino, LLC v. Waters Techs. Corp., 490 F.3d 946, 948 (Fed.Cir.2007). Such structure “must be clearly linked or associated with the claimed function.” Med. Instrumentation & Diagnostics Corp. v. Elekta AB, 344 F.3d 1205, 1219 (Fed.Cir.2003). Failure to specify the corresponding structure in the specification amounts to impermissible pure functional claiming. Id. at 1211. “Although [§ 112 ¶ 6] statutorily provides that one may use means-plus-function language in a claim, one is still subject to the requirement that a claim ‘particularly point out and distinctly claim’ the invention.” In re Donaldson Co., 16 F.3d 1189, 1195 (Fed.Cir.1994) (en banc). If an applicant does not disclose structure for a means-plus-function term, the claim is indefinite.
Ergo argues that the corresponding structure for “control means” is the recitation of “control device” throughout the specification. Ergo contends that the general disclosure of a “control device” is all that is necessary because a control device is a generic structure known to those skilled in the art. Such a control device, according to Ergo, is synonymous with a general-purpose computer, even though a computer is not recited in the specification. Ergo argues that disclosure of an algorithm was not required, because a general-purpose computer can perform the function. Ergo claims that the specification describes additional structure of the control device, in particular that it has processing capabilities, can generate control commands, and has memory. Ergo also claims that the specification’s teaching that the control device has a “programming means” constitutes “the structure with which control and monitoring functions can be performed.” Appellant’s Reply Br. at 7-8 (emphasis omitted).
None of these disclosures, however, are structure for the function of “controlling the adjusting means.” The recitation of *1364 “control device” provides no more structure than the term “control means” itself, rather it merely replaces the word “means” with the generic term “device.” The specification discloses that the control device has memory, but memory is not structure capable of performing the function of “controlling the adjusting means.” While in some circumstances generic structural disclosures may be sufficient, that is not the case here. See, e.g., Telcordia Techs., Inc. v. Cisco Sys., Inc., 612 F.3d 1365, 1376-77 (Fed.Cir.2010) (holding that “controller” was sufficient disclosure because “[t]he record shows that an ordinary artisan would have recognized the controller as an electronic device with a known structure”). In this case, Ergo’s expert testimony illustrates that those skilled in the art would not recognize a “control device” as a known structure. J.A. 73 at 99:2-19. Instead, Ergo’s expert explained that there were at least three different types of control devices commonly available and used at the time to control adjusting means: microprocessors, discrete circuits connected to stepper motors, and analog circuits. Id. Although one of skill in the art may have been able to find a structure that would work, that does not satisfy § 112 ¶ 6. Under § 112 ¶ 6, a patentee is only entitled to “corresponding structure ... described in the specification and equivalents thereof,” not any device capable of performing the function. 35 U.S.C. § 112 ¶ 6 (emphasis added); see also Blackboard, Inc. v. Desire2Learn Inc., 574 F.3d 1371, 1385 (Fed.Cir.2009) (“That ordinarily skilled artisans could carry out the recited function in a variety of ways is precisely why claims written in ‘means-plus-function’ form must disclose the particular structure that is used to perform the recited function.”). As Ergo’s expert testimony demonstrates, the “control device” is not a specific structure.
As to Ergo’s claim that “control device” is synonymous with computer, even if we were to accept that one skilled in the art would understand a control device to be a general-purpose computer, the specification fails to disclose a corresponding algorithm required by our precedent. In WMS Gaming Inc. v. International Game Technology, we explained that computer-implemented means-plus-function terms are limited to the algorithms disclosed in the specification. 184 F.3d 1339, 1348 (Fed.Cir.1999). We later clarified that WMS Gaming “established that the corresponding structure for a § 112 ¶ 6 claim for a computer-implemented function is the algorithm disclosed in the specification.” Harris Corp. v. Ericsson Inc., 417 F.3d 1241, 1249, 1254 (Fed.Cir.2005).
Until recently, we have consistently required “that the structure disclosed in the specification be more than simply a general purpose computer or microprocessor.” See Aristocrat Techs. Austl. Pty Ltd. v. Int’l Game Tech., 521 F.3d 1328, 1333 (Fed.Cir.2008). “Because general purpose computers can be programmed to perform very different tasks in very different ways, simply disclosing a computer as the structure designated to perform a particular function does not limit the scope of the claim to ‘the corresponding structure, material, or acts’ that perform the function, as required by section 112 paragraph 6.” Id. Requiring disclosure of an algorithm properly defines the scope of the claim and prevents pure functional claiming.
In re Katz Interactive Call Processing Patent Litigation identified a narrow exception to the requirement that an algorithm must be disclosed for a general-purpose computer to satisfy the disclosure requirement: when the function “can be achieved by any general purpose computer *1365 without special programming.” 639 F.3d 1303, 1316 (Fed.Cir.2011). In In re Katz, we held that “[a]bsent a possible narrower construction” of the terms “processing,” “receiving,” and “storing,” the disclosure of a general-purpose computer was sufficient. Id. We explained that “[i]n substance, claiming ‘means for processing,’ ‘receiving,’ and ‘storing’ may simply claim a general-purpose computer, although in means-plus-function terms.” Id. at 1316 n. 11. In other words, a general-purpose computer is sufficient structure if the function of a term such as “means for processing” requires no more than merely “processing,” which any general-purpose computer may do without any special programming. Id. at 1316-17. If special programming is required for a general-purpose computer to perform the corresponding claimed function, then the default rule requiring disclosure of an algorithm applies. It is only in the rare circumstances where any general-purpose computer without any special programming can perform the function that an algorithm need not be disclosed.
The “control means” at issue in this case cannot be performed by a general-purpose computer without any special programming. The function of “controlling the adjusting means” requires more than merely plugging in a general-purpose computer. Rather, some special programming would be required in order to control the adjusting means. Ergo’s proposed construction exemplifies this: “any programmable computer or programmable control device suitable for use in a multichannel infusion system and equivalents thereof.” A computer would need special programming to be “suitable for use in a multichannel infusion system.” A specially adapted computer is not a general-purpose computer.
At oral argument, Ergo argued that Typhoon Touch Technologies, Inc. v. Dell, Inc. supports its position because we held that algorithms may be disclosed “in prose.” Oral argument at 5:10-9:10, Ergo Licensing, Inc. v. CareFusion 303, Inc., No.2011-1229, available at http:// oralarguments.cafc.uscourts.gov/default. aspx?fl=2011-1229.mp3 (citing 659 F.3d 1376 (Fed.Cir.2011)). An algorithm may be expressed “in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure.” Typhoon Touch, 659 F.3d at 1385 (quoting Finisar Corp. v. DirecTV Grp., Inc., 523 F.3d 1323, 1340 (Fed.Cir.2008)). Even described “in prose,” an algorithm is still “a step-by-step procedure for accomplishing a given result.” Id. at 1385 (quoting In re Freeman, 573 F.2d 1237, 1245-46 (CCPA 1978)). In this case, however, there is no algorithm described in any form for the function of “controlling the adjusting means.” The specification merely provides functional language and does not contain any step-by-step process for controlling the adjusting means. As a result, we hold that the district court correctly determined that the “control means” terms are indefinite for failure to disclose corresponding structure.
AFFIRMED